MERCHANTS' NATIONAL BANK V. OVERMAN CARRIAGE CO.

1. WHAT WILL AMOUNT TO A PURCHASE BY A CORPORATION OF ITS STOCK.
    Where a board of directors of a corporation, by resolution authorize the pur-
    chase of its stock held by two of its officers, such purchase to be made by one
    of the directors as trustee for the company and the same to be paid for with
    notes of the company, the company to pay such notes as they mature, hold-
    ing said trustee harmless and retaining the stock when the notes are paid,
    constitutes a purchase by the company of its own stock.

2. A CORPORATION CANNOT DEAL IN ITS OWN STOCK.
    Where a corporation purchases its own stock from two of its officers, for
    the reason and in consideration of their proposed retirement: *Held*, that
    this does not constitute a valid reason for the company to buy in its own
    stock; and, therefore, such purchase not being lawful, but void, the parties
    who attempted to sell their stock did not cease to be stockholders in said
    company.

APPEAL from the Court of Common Pleas of Hamilton county.

SWING, J.

The point in controversy in this case is whether Peter Junghaus and Bernard S. Fallon are stockholders in the Overman Carriage Company.

On June 30, 1893, they each owned fifty shares of the capital stock of said company. On that date, at a meeting of the board of directors of said company, consisting of Messrs, Rossiter, Burrows, Fallon and Junghaus, the last two being the parties above named—Mr. Junghaus acting as secretary—Mr. Burrows made a motion which was carried, the president, Mr. Rossiter, not voting. The motion was as follows:

"That in consideration of the proposed retirement of Mr. Fallon, as vice-president, and Mr. Junghaus, as secretary, Mr. G. H. Burrows be authorized to purchase their stock as trustee for the company, paying for the same—giving notes to the order of the company paying five hundred dollars per month, with interest at six per cent. The president is authorized to endorse said notes, and the company to pay the same as they mature, holding said Burrows harmless, and retaining the stock when all are paid."

The evidence clearly shows that Junghaus and Fallon had full and accurate knowledge of the nature of the transaction; in fact, the resolution was carried by their votes, and they were chargeable with knowledge of the nature of the transaction, whether they actually knew its scope or not. At this time the assets of the company exceeded the liabilities, not counting the stock as a liability, by some $17,000. The capital stock of the company was $55,000, and according to the books of the company, the value of the stock was about thirty cents on the dollar, although if forced to realize, it probably would have been insolvent. At this time neither Junghaus or Fallon was indebted to the company, and they were solvent.

It seems hardly to admit of any question but what the sale of this stock by Junghaus and Fallon was a sale by them to the company itself. The purchase by Burrows, as trustee for the company, and its transfer to

him as such does not change the real motive of the transaction. It was nothing more nor less than a sale to the company of its own stock.

That a company can not deal in its own stock is a well settled principle of the law that needs no citation of authorities. There are exceptions to this rule in cases only where the company may buy in its stock for the purpose of saving it from loss and for its own protection.

The resolution under which this purchase was made recites that it was for the purpose of the retirement of Fallon as vice-president and Junghaus as secretary of the company. This is no valid reason for the company buying in its own stock. It may or may not have been for the interest of the company for these parties to retire from their offices, but it is not sufficient in law for the company to become purchasers of its stock. The necessity for avoiding loss to the company did not exist.

There is nothing in the case of Morgan v. Lewis, 46 O. S., 1, relied on by Junghaus and Fallon as authorizing this transaction, which holds that a corporation can buy in its stock, except from necessity to avoid loss to the corporation. The reason for the holding there made, is found in the language of the court on page 7, where it is said:

"This proof would have established something beyond the mere good faith of the transaction."

Of course, if there was bad faith in procuring the stock of the corporation, it was the duty and the right of the corporation to undo the fraud.

But there was no element of fraud in procuring the stock of Junghaus and Fallon by them. They were the owners of the stock in good faith and for value and in the regular way, and the company did not have the power to purchase their stock. The transaction not being lawful, it was void, and said parties did not cease to be stockholders in said company, and must therefore still be stockholders.

A decree should be entered in accordance with this finding.

*Marsh & Ritchie*, for Plaintiff.

*Follett & Kelley, contra.*

---

## REFERENCE.

[Marion Circuit Court, January Term, 1899.]

Price, C. J., Day and Douglass, JJ.

(Judge Douglass of fifth Circuit sitting in place of Judge Norris.)

GUTHRIE & SONS v. ANGOSTA MILLING CO ET AL.
JOHN P. UNCAPHER v. SAME.

REVIEW OF FINDINGS OF A REFEREE ON THE WEIGHT OF THE EVIDENCE.
    Where a party desires to review the findings of a referee on the weight of the evidence, it is necessary to file a motion for new trial with such referee and that an exception be noted to the overruling of the same, and that any bill of exceptions taken must be tendered to and signed by the referee.

ERROR to the Court of Common Pleas of Marion county.

PRICE, C. J.

These cases were heard and submitted together, and what we may ay will apply to both.